**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

DUBOIS, et al.,

        Plaintiffs,

v.                                  Case No: 4:03-CV-107-SPM

LEVINE, et al.,

        Defendants.


**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW TO COMPEL
PRODUCTION OF DOCUMENTS AND FOR ENTRY OF
<u>AN ORDER OF PROTECTION</u>**

      Pursuant to Fed. R. Civ. P. 37(a) and N.D. Loc. R. 26.2(D), Plaintiffs, through their undersigned attorneys, hereby move this Court for entry of an Order compelling Defendants to produce the documents requested.  With regard to the disclosure of class members' confidential personal and medical information, for the reasons stated here and in Plaintiffs' Memorandum in support of this motion, Plaintiffs request that the documents be released under an Order of Protection pursuant to Fed. R. Civ. P. 26(c)(2).  Plaintiffs request that the Court enter the proposed Order of Protection attached as Exhibit 1.  As grounds for the motion, Plaintiffs state:

      1.      This action was filed on April 11, 2003.  (Dkt. #1.)

2.     Defendants operate a Medicaid home and community based care program for persons with traumatic brain or spinal cord injuries (the Waiver Program) to enable these individuals to avoid unnecessary institutionalization and to receive medically necessary services while living at home.  (Dkt. #1 ¶¶2,37.)  As a result of under funding and poor administration, Defendants have forced the named Plaintiffs, and over 350 class members, to wait years to receive community based services, without any notice of their right to challenge this decision, even though there are at least 60 unfilled slots for enrolling persons into the Waiver Program.  (*Id.* ¶¶4, 40); (Dkt. #111, Ex. A, at 67 & Ex. B, at 48.)  Although Defendants will provide funding for these individuals to live in institutions, they refuse to fund their community based services through the Waiver Program.  (Dkt. #1 ¶¶69, 74 & 78.)  Defendants' actions have caused Plaintiffs to be unnecessarily institutionalized, or placed at risk of institutionalization, in violation of federal law. (Dkt. #1 ¶¶1-3.)

3.     Plaintiffs allege that Defendants' systemic and continuing failure to provide the class representatives, and class members, with Waiver Program services violates the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 (Section 504), the Medicaid Act and the Due Process Clause of the United States Constitution.  (Dkt. #1 ¶¶1-3, 79-86.)  Plaintiffs seek declaratory and injunctive relief to remedy these systemic violations.  (*Id.* ¶¶32-33.)

4.     On March 1, 2004, the Court certified a class and denied Defendants'

Motion to Dismiss this case.  (Dkt. #75.)[1]

5.      On October 8, 2003, Plaintiffs served their First Request to Produce Documents.  Ex. 2.  On November 25, 2003, Defendants submitted a number documents and raised objections to some of the requests on the grounds that the requests violated federal and state privacy laws.  Ex. 3.  These requests are continuing and Defendants are required to file supplementary answers and documents if further or different information responsive information becomes known to them.

6.      At the deposition of two designated agents of Defendant Department of Health on March 24 and 25, 2004, Plaintiffs renewed their requests for several documents which had been previously requested and not produced (among which several are at issue in this motion). By letter dated May 21, 2004, Plaintiffs again renewed the requests for the documents which were not provided.[2]  (Dkt. #100, at

---

[1] The class is defined as:  All individuals with traumatic brain and spinal cord injuries who the state has already determined or will determine to be eligible to receive BSCI Waiver Program Services and have not received such services.  *Id.*

[2] As noted in Plaintiffs' Motion to Extend Discovery, the parties were planning on conducting discovery in this case through the month of June with, at least, an implicit understanding between counsel that the current scheduling order would need to be extended past the current June 1, 2004 deadline to accommodate all schedules involved. (Dkt. #101.) If Defendants' counsel had raised their objection to extending discovery before May 26, 2004, Plaintiffs would have filed a motion to compel production and to extend discovery in order to have sufficient time to resolve these issues.  In any case, the Magistrate Judge has Ordered a new discovery cutoff date of July 23, 2004.  (Dkt. #108.)

Ex. A.)  Defendants have refused to provide these documents.[3]

7.    The documents that Defendants refuse to provide contain critical information concerning individual class members, including their identities, as well as Plaintiffs' claims of systemic violations  of the Medicaid Act, ADA and due process.   Plaintiffs are not able to obtain the information sought about class members from any source.

8.    The specific Requests to Produce to which Defendants objected, and Defendants' specific objections, are as follows:[4]

**Request No. 17**:

All documents which refer to persons that have applied for and/or are in need of BSCIWP services, but have not been provided with services, on a monthly basis since the Waiver was approved by CMS, including but not limited to documents which show the number of individuals, their names and contact information, their initial application date, the length of time on the waiting list for each person, where each person resided at the time of their application, the services needed by each person and the estimated cost of providing such services.

**Defendants' Objection**:

This requests [sic] calls for the production of documents that are privileged

---

[3] Defendants' filed a Motion for Protective Order and asked that the discovery requested by Plaintiffs in their letter of May 21, 2004, not be had or, in the alternative, that this Court issue an order requiring individual notice to each person, and consent obtained, before any disclosure of information pertaining to those people is made. (Dkt. #100, at 5-6.).  The Magistrate Judge denied this motion as moot. (Dkt. #108.)

[4] Defendants' counsel have represented in their motion, and in a May 26, 2004, phone call between counsel, that they will provide documents in response to requests nos.: 9, 29, 33 and 45.  Accordingly, Plaintiffs have not addressed those requests here.

and confidential under Section 413.441, Fla. Stat., and HIPAA. [Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d-6]

**Request No. 18**:

All documents which refer to all individuals that have received BSCIWP services on a monthly basis since the Waiver was approved by CMS, including but not limited to documents which show the number of individuals, their names and contact information, their initial application date, the length of time on the waiting list for each person (if applicable), where each person resided at the time of their application, where each person currently resides, the services needed by each person and the cost of providing such services.

**Defendants' Objection:**

This requests [sic] calls for the production of documents that are privileged and confidential under Section 413.441, Fla. Stat., and HIPAA.

**Request No. 19:**

All files, records and other documents that concern each applicant for and/or recipient of services through the BSCIWP including but not limited to all BSCIP [Brain Spinal Cord Injury Program] and BSCIWP files for individuals placed on a waiting list for BSCWIP services.

**Defendants' Objection:**

This requests [sic] calls for the production of documents that are privileged and confidential under Section 413.441, Fla. Stat., and HIPAA.

**Request No. 20**:

All documents that refer to contact between any nursing home residents and the BSCIP or BSCIWP regarding community-based services since the BSCIWP was approved by CMS.

**Defendants' Reponse**:

5

**Initial:** See DOH exhibit #s 20, 20A and 20B.[5]

**Request No. 27:**

All documents which refer to any individuals that were institutionalized in a hospital, nursing home or other facility, after they applied for BSCWIP services, including but not limited to documents which show the number of individuals, their names and contact information, their initial application date, the length of time on the waiting list for each person (if applicable), where each person resided at the time of the their application, where each person currently resides, the services needed by each person and the estimated cost of providing such services.

**Defendants' Objection:**

This requests [sic] calls for the production of documents that are privileged and confidential under Section 413.441, Fla. Stat., and HIPAA.

**Request No. 30:**

All documents which specifically state the numerical position and prioritization of each of the named Plaintiffs on the BSCIWP waiting list for services in relation the other individuals on the waiting list, including but not limited to documents which reflect any changes in such position since each individuals' application for services.

**Defendants' Objection:**

This requests [sic] calls for the production of documents that are privileged and confidential under Section 413.441, Fla. Stat., and HIPAA.

---

[5] Defendants produced a description of the Institutional Transition Initiative (ITI) and a draft of a study titled, "Promising Practices Nursing Home Transition," dated September 2003. Plaintiffs informed Defendants that these documents were non-responsive. By letter dated May 21, 2004, Plaintiffs clarified the information sought and their belief that responsive documents existed. For example, during the deposition of named Plaintiff Michael Dubois, Defendants' counsel produced a written assessment done as part of the Defendants' ITI. Plaintiffs' counsel had never been provided with a copy of this document in discovery and believe that similar documents for other clients concerning the ITI exist and have not been produced. (Ex. 4, at 34-36.)

**Request No. 34:**

All documents that involve persons that have moved from nursing homes, hospitals or other institutional care facilities and into a community-based placement through the BSCIWP, including but not limited to the names, contact information for each person, the date of their initial application, the length of time on the waiting list (if applicable) for each person, the cost of services provided for each person and the specific services provided to each person.

**Defendants' Objection:**

**Initial**:  The agency does not have documents concerning this request.

**Supplemental:**  The information requested by [this paragraph] implicates privacy rights as well as privilege and confidentiality under state and federal law, particularly the Health Insurance Portability and Accountability Act (HIPAA) of 1996.  42 CFR 431.300 *et. seq.*, requires virtually absolute non-disclosure of any Medicaid recipient information without prior permission of each recipient.[6]

**Request No. 37**:

All documents relating to the survey conducted by the BSCIP[7], pursuant to a contractual relationship with the University of Florida and Health Management Associates, including but not limited to:

a)  Names, addresses and phone numbers of individuals who were surveyed (or who the surveyors attempted to contact as part of the survey);

b)  Raw data associated with the survey responses;

---

[6] This objection was raised for the first time in Defendants' Motion for Protective Order and was not cited in any discovery response.  (Dkt. #100.)  Although that motion was dismissed as moot, Plaintiffs have addressed the objections raised by Defendants based on the assumption that those same arguments will be raised again in Defendants' opposition to this motion.

[7] The BSCIP is the Brain and Spinal Cord Injury Program operated by Defendant Department of Health.  The BSCIP is the entry point for individuals into the Waiver Program and provides limited short-term rehabilitative services to persons with traumatic brain or spinal cord injuries.

c)       Notes made by persons administering the survey;

d)       Contracts for any services relating to the BSCIP survey, including but not limited to contracts involving UF, the Florida Department of Health and Health Management Associates, Inc.;

e)       Drafts of the survey;

f)       Any documents referencing the methodology relied upon in conducting the survey;

g)       Any correspondence and/or memoranda between the BSCIP, UF and any other entity regarding the survey;

h)       Any background documents which concern the development of, purpose for and any contract(s) for the survey;

i)       Any instructions to individuals conducting the survey; and

j)       Any documents describing the time frame for the survey.

**Defendants' Objection**:

**Initial:** The agency does not have documents concerning this request

**Supplemental**: The information requested by [this paragraph] implicates privacy rights as well as privilege and confidentiality under state and federal law, particularly the Health Insurance Portability and Accountability Act (HIPAA) of 1996.  42 CFR 431.300 *et. seq.*, requires virtually absolute non-disclosure of any Medicaid recipient information without prior permission of each recipient.[8]

**Request No. 46:**

All documents which reflect and/or refer to any complaints made by any individual concerning the BSCIP and/or BSCIWP since the Waiver was

---

[8] This objection was raised for the first time in Defendants' Motion for Protective Order and was not cited in any discovery response.  (Dkt. #100.)  *See* FN 6.

approved by CMS.

**Defendants' Response**:

**Initial:**  See DOH exhibit #46.[9]

**Supplemental:**  The information requested by [this paragraph] implicates privacy rights as well as privilege and confidentiality under state and federal law, particularly the Health Insurance Portability and Accountability Act (HIPAA) of 1996.  42 CFR 431.300 *et. seq.*, requires virtually absolute non-disclosure of any Medicaid recipient information without prior permission of each recipient.[10]

9.    Undersigned counsel certifies that she has conferred with opposing counsel in a good faith effort to resolve this dispute without judicial action.[11] Defendants' counsel also stated that he opposes this motion.

WHEREFORE, Plaintiffs respectfully request that this Court issue an Order, in an expedited manner, compelling Defendants to produce documents responsive to requests nos.: 17 through 20, 27, 30, 34, 37 and 46, and issue the attached proposed Order of Protection to safeguard the confidentiality and privacy concerning the information disclosed.

## MEMORANDUM OF LAW

---

[9] Plaintiffs informed Defendants that the documents produced by are non-responsive to this request and requested that Defendants provide any responsive documents or a written statement that none exist.

[10] This objection was raised for the first time in Defendants' Motion for Protective Order and was not cited in any discovery response.  *See* FN 6.

[11] Plaintiffs' counsel had a telephone conference with Defendants' counsel on May 26, 2004, in an attempt to resolve this dispute without judicial action, with no success.

## ARGUMENT

**I.     Standards for Granting a Motion to Compel and for an Order of Protection**

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.   Fed. R. Civ. P. 26(b)(1).   Relevant information need not be admissible, as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence.   *Id.*  A party may move to for an order to compel the production or inspection of documents with respect to any objection or any failure to allow inspection.  Fed. R. Civ. P. 34(b); *Fergis & Selck Architects v. Suzy EDL Interiors,* 2003 WL 23147405 (M.D. Fla. 2003). Whether or not to grant the order to compel is at the discretion of the trial court.  *Id.*

Federal Rule of Civil Procedure 26(c)(2) permits a court, upon motion by a party, to enter a protective order to provide that disclosure or discovery may be had only on specified terms and conditions.   The prerequisite of such an order is a showing of "good cause" made by the party seeking protection.  *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304, 1313 (11th Cir. 2001).  In determining "good cause," courts must balance the party's interest in obtaining access against the other party's interest in keeping the information confidential.  *Id.*[12]  *Cf. Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (11th Cir. 1990) (motion to compel

---

[12] Defendants appear to agree with this standard by their reliance on *Welsch v. City and County of San Francisco*, 887 F. Supp. 1293 (N.D. Cal. 1995). (Dkt. #100 at 4.) However, Defendants fail to mention the second prong of the inquiry: the balancing of the interests.

denied where discovery not needed for factual proof in response to summary judgment motion).

## II.   Plaintiffs' Class Counsel Have a Right of Access to Class Members' Records

In summary, Defendants objected to document requests numbers: 17, 18, 19, 27, 30, 34, 37 and 46 based on an assertion that the documents and the information they contain are privileged and confidential under § 413.441, Fla. Stat.,[13] and provisions of the Health Insurance Portability and Accountability Act of 1996, (HIPAA) 42 U.S.C. § 1320d-6.   Defendants, in their Motion for Protective Order, which was dismissed as moot, argued that these documents were also subject to confidentiality under 42 C.F.R. § 431.300 *et seq.*; (Dkt. #100, at 3 n.2.) Defendants object to providing responsive documents to request number 20 which involves Waiver Program and BSCIP client information.   Although not raised by Defendants in their motion, Plaintiffs believe that Defendants would assert that the client information requested in document request number 20 is also subject to the same privilege and confidentiality provisions cited above and should be considered as part of this motion. As discussed below, Defendants' reliance on certain federal and state confidentiality laws is misplaced and this Court can, and should, require

---

[13] Defendants' reference to this statute is erroneous as the provision cited does not exist.   Plaintiffs believe the intended reference is to §381.775, Fla. Stat. (2004) which concerning confidentiality of BSCIP client information and will address that section for purposes of this opposition.

11

the disclosure of the information, albeit under an Order of Protection.[14]

In light of the certification of a class in this case, the scales tip in Plaintiffs' favor for disclosure of the information.   *See e.g., Rosie D. v. Swift*, 256 F. Supp. 2d 115 (D. Ma. 2003) (granting motion to compel production of class members' records from state agency by applying balancing test where state privacy statute applied in case alleging failure to provide community based services to individuals with disabilities).   *Rosie D.* is entirely consistent with well established law that class counsel is entitled to access private information.   *See Ginest v. Board of Cty. Comm.*, 306 F.  Supp.2d 1158 (D.  Wy. 2004) and cases cited there including *Lora v. Bd. of Educ. of City of New York*, 74 F.R.D. 565 (E.D.N.Y. 1977).

In *Ginest,* plaintiffs sought production of medical records of inmates confined to a correctional facility.   The records were sought to discover evidence to support allegations of systemic deficiencies in medical care in violation of a consent decree. The court observed that "courts are virtually unanimous in holding that class counsel in institutional litigation of this nature has a right to examine client medical  records to determine whether a systemic failure exists in the institution's health care system. *Id.* at 1159.   The court further observed that:

> ...in class action institutional litigation ...'the individual
> privacy   interest   and   state   policies,   through   [sic]

---

[14]   As indicated above and discussed below, Plaintiffs agree that an Order of Protection should be entered in this case, but one that is less burdensome than that suggested by Defendants in their previous Motion for Protective Order which was denied as moot.  (Dkt. #100.)

cognizable, cannot prevail either as a constitutional or federal evidentiary matter.' [citations omitted]. **Individual and state privacy interests must yield to the federal interest in discovering whether public officials and public institutions are violating federal civil rights.** '[I]n a civil rights action brought pursuant to a federal claim, statutory privileges are not binding.' [citation omitted].  In reaching this conclusion, the Court is influenced by the fact that the disclosure of the requested medical information 'is sought by professionals whose purpose is to protect the constitutional rights of the Plaintiff class,' and class counsel will keep the information confidential except to the extent that disclosure is necessary to advise the Court of violations of federal rights.

*Id.* at 1159-60 (emphasis supplied).

Plaintiffs do not have any other access to the information sought.  Defendant Department of Health, through the administration of the Waiver Program, is the sole possessor of the information concerning class members, including their identities. As discussed above, this lawsuit seeks to remedy systemic violations in Defendants' administration of the Waiver Program which provides home and community based services to individuals with traumatic brain or spinal cord injuries.  The program is intended to prevent unnecessary institutionalization, and risk of institutionalization, of persons with disabilities in order to obtain long-term care.  Based on the experiences of the named class members, there is good cause to believe that there are wide-spread systematic and systemic violations of class members' federal rights.  (Dkt. #111 and exhibits.)   Without the information requested, Plaintiffs will be unable to review and document these violations and thus, will be unable to

13

adequately safeguard and protect the interests of the class members.  Without access to class members' records, Defendants are free to carry on these violations unchallenged and Defendants will not be compelled  to provide the services that class members need to live full, independent lives and ensure that they are provided with the rights guaranteed under the Constitution and federal laws.

Contrary to Defendants' argument, the documents sought by Plaintiffs are relevant to the class claims of systemic violations in the administration of the Waiver Program.  For example, Defendants' designated agents, who administer the Waiver Program, testified that individuals on the waiting list for the program, including the named Plaintiffs, have been denied services because the program has determined that either they are not in immediate need of community based services, lack "community supports," are not Medicaid eligible or due to a lack of providers. (Dkt.#104, Ex.A at 32, 62; Ex. 5, at 5.)  These officials also claim that individuals on the waiting list have been informed of these decisions and provided internally contradictory testimony about whether and what type of due process notices are provided to clients that apply for, are determined ineligible and/or are placed on a waiting list for Waiver Program services.  Ex. 6, compare ¶¶35, 66.  The Medicaid Act and constitutional due process require written notice and an opportunity to be heard on these determinations about eligibility.  However, the named Plaintiffs have never been informed, in writing or otherwise, of such determinations. Ex. 7, at 17-18; Ex. 8 at 38.)  Based upon Defendants' representations, the undisclosed class

14

members' records should contain information about these determinations and whether Defendants have properly notified class members' of these decisions and their rights.   The only way for Plaintiffs to obtain conclusive evidence as to whether or not Defendants' contradicted assertions concerning the provision of due process rights are true or not is to examine the class members' files.  To prove the systemic due process violations for the class, Plaintiffs need the only source of that information – the actual client records which Defendants' claim contain such notices.   The production of these documents will provide relevant evidence regarding Plaintiffs' Medicaid and due process claims.

The information sought is also relevant to the class claims that Defendants' have violated the Medicaid Act, the ADA and Section 504 by: failing to provide services to individuals with traumatic brain or spinal cord injuries in the setting most integrated to their needs and, thus, forcing class members to live an institution or be placed at risk of institutionalization in order to obtain needed care; failing to have "a comprehensive, effectively working plan" for placing qualified persons with disabilities in less restrictive settings and to have a waiting list for services that moves at a "reasonable pace."  *Olmstead*, 527 U.S. at 598-601 & 605-06.  This information is also relevant to Plaintiffs' claims about Defendants' systemic failure to provide services with "reasonable promptness" and failure to provide class members with the "freedom of choice" between institutional and community based care in violation of the federal Medicaid laws. 42 U.S.C. §1396a(a)(8); 42 U.S.C. §

1396n(c)(2); *Doe v. Chiles*, 136 F.3d 709, 721 n. 21 (11th Cir. 1998).  The only way for Plaintiffs to prove these systemic violations is to examine class members' records which include information about when they applied for services, how long they have been on a waiting list and whether class members have been forced to be institutionalized (or placed at risk of such) due to Defendants' policies and procedures in administering the Waiver Program.   Defendants should not be permitted to prevent Plaintiffs from access to information relevant to proving their claims.

### III.    Defendants' Production and Disclosure of the Requested Documents Does Not Violate Federal or State Privacy Laws.

Defendants argue that HIPAA prohibits disclosure of the requested documents which contain client personal and medical information.  Plaintiffs do not dispute that HIPAA's protections apply to the information sought.  HIPAA and its implementing regulations impose certain constraints on the use or disclosure of protected health information about an individual that is maintained in the records of a "covered entity." 42 U.S.C. § 1395ss(d)(3)(A); 45 C.F.R. §§ 160 & 164.  Covered entities include health plans, the definition of which explicitly includes "the Medicaid program under title XIX of the Act, 42 U.S.C. 1396, *et seq.*"  45 C.F.R. § 160.103. Although HIPAA's protections apply to the documents Plaintiffs seek, the documents can be produced by Defendants pursuant to one of the specific exceptions to HIPAA's non-disclosure requirements.

It is clear that federal regulations allow disclosure of protected health

16

information in the course of any judicial or administrative procedure in response to a discovery request.  45 C.F.R. § 164.512(e).  In order for this exception to apply, the covered entity must be given satisfactory assurances that the party seeking the information has made reasonable efforts to secure a protective order.  *Id*. at §160.512(e)(1)(ii)(B).  "Satisfactory assurances" consist of a written statement and accompanying documentation demonstrating that the party seeking the protected health information has requested a qualified protective order from the court.  42 C.F.R. § 164.512(e)(1)(iv).  *Cf. A Helping Hand, LLC. v. Baltimore Cty., Md.*, 295 F.Supp.2d 585, 591-593(D. Md.  2003) (recognizing the applicability of HIPAA regulations permitting disclosure in judicial proceeding but not requiring disclosure on other grounds).

Plaintiffs do not object to the entry of such an order.  A qualified order of protection prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested and requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.  42 C.F.R. § 164.512(e)(1)(v).  Plaintiffs requested that Defendants enter into a stipulated consent protective order to safeguard confidentiality under HIPAA and state privacy law.  (Dkt. #100, at Ex. A.)  Defendants responded to that request by refusing to provide the documents and filing a motion for protective order.  (Dkt. #100.)  Plaintiffs proposed Order of

17

Protection meets HIPAA's requirements.  The information sought can and should be disclosed under the terms of the proposed Order of Protection.

Moreover, policy reasons mitigate against Defendants' incorrect interpretation of HIPAA's requirements as an absolute bar to disclosure without individual client authorizations.  If Defendants' interpretation of HIPAA were accepted, litigation on behalf of a class of individuals seeking Medicaid and/or other medical services would be impossible.  Such an absurd result cannot, and was not, intended by Congress and the agency responsible for enforcing HIPAA. 45 C.F.R. § 164.512(e).

Nor do federal Medicaid regulations prohibit disclosure of recipient information without prior permission of each recipient.  (Dkt. #100, at p.3, FN 2.) Similar to HIPAA, these regulations allow disclosure of information under certain circumstances that are present in this case.

Medicaid regulations provide that information may be disclosed for purposes directly connected with the administration of the state plan.  42 C.F.R. § 431.301. Such purposes include conducting a civil proceeding related to the administration of the plan.  42 C.F.R. § 431.302(d).  Plaintiffs' attorneys are conducting a civil proceeding related the administration of a part of the Medicaid state plan - Florida's Medicaid Waiver Program for persons with traumatic brain or spinal cord injuries. Disclosure is authorized in this instance.

Federal Medicaid regulations also require that access to information be restricted to persons who are subject to standards of confidentiality comparable to

those of the agency. 42 C.F.R. § 431.306(b). That requirement is satisfied through Plaintiffs' proposed Order of Protection which would impose such standards of confidentiality. The regulations also contemplate the release of information, in comparable circumstances through a subpoena, and require only that the Court be informed of the applicable statutory provisions, policies and regulations restricting disclosure. 42 C.F.R. § 431.306(f). Through this motion and entry of the proposed Order of Protection, the court is properly informed of the confidentiality restrictions that apply.

Assuming arguendo that federal law does not control, Defendants argument that disclosure of these records would violate Florida law is also misplaced in light of the plain statutory language. Information about applicants or recipients in the BSCIP may be released "to the applicant or recipient, or his or her representative" upon receipt of a written waiver. §381.775(a) (emphasis added). The BSCIP and Waiver Program's current practice, in compliance with HIPAA and Florida law, permits the disclosure of clients' information through the written authorization of the client's legal representative. Ex. 9.[15]   Plaintiffs' counsel has obtained the BSCIP

---

[15] The statute also appears to permit disclosure of client's representative upon an order of a judge of a court of competent jurisdiction following a finding in an *in camera* proceeding that the records are relevant and should be released. § 381.775(1)(d), Fla. Stat. (2004). An *in camera* review would reveal that these documents are relevant to representation of the class, prosecution of the class claims and can be disclosed under state law. However, as discussed above, disclosure through an authorization signed by the client's representative is legally sufficient under the statute. Plaintiffs do not believe than an *in camera* review is required under Florida law, assuming it applies and is not necessary under federal law.

and Waiver Program records of the named Plaintiffs and other individuals that have applied for and/or that are receiving services by signing an authorization as the legal representative of those individuals.   Since a class has been certified, Plaintiffs' counsel is the legal representative of all class members and has the right to access such records under §381.775(a), Fla. Stat..

### III.   Individual Notice and Consent Do Not Need to be Obtained for Each Class Member Before Information is Disclosed.

In their motion for protective order, Defendants requested that this Court require that individual notice be given to each class member and consent obtained from each before any such disclosure is made.[16] (Dkt. #100.) As discussed above, neither HIPAA, the Medicaid laws, nor state law require the imposition of such a restrictive and onerous order.   Moreover, this case has been certified as a class action by this Court.  That ruling entails a finding under Rule 23 of the Federal Rules of Civil Procedure that Plaintiffs' attorneys are able to fairly and adequately represent this class. *Barlow v. Marion Co. Hospital Distr.*, 88 F.R.D. 619, 628 (D.C. Fla. 1980).  Fair and adequate representation necessarily consists of safeguarding the interests of the  class.  *Id.*   Access to this information is necessary to ensure

---

[16] Defendants also asserted that because they have filed a motion to decertify the class, the court should, in effect, assume that the class is no longer certified until it rules upon the motion. (*Id.,* at 3.) This assertion is baseless.  This Court has determined that the class meets certification requirements and unless it find otherwise, Defendants are not entitled to delay discovery simply by requesting that the Court reverse its earlier decision, especially in light of the discovery cutoff date.  The failure to produce these documents in a timely manner could cause undue delay.

that Plaintiffs' counsel are able to adequately represent the class.   For example, without  inspecting the class members' records, Plaintiffs' counsel have no way of knowing whether class members have received adequate, or any notice, concerning: their rights to apply for Waiver Program services, their rights to legally adequate notice of delays or denials in services,  their rights to appeal any such decisions, their rights to contest any decisions to place them in a certain category of the waiting list for services and whether services have been provided in a manner that complies with the requirements of the Medicaid laws, the ADA and Section 504.

Defendants submitted that an order of protection should require notice to and consent obtained from every person affected before disclosure, but did not provide any proposed order.  (Dkt. #100 at 5-6.) Such a procedure is unduly burdensome, is fraught with the potential to be confusing to class members and utterly defeats the procedural advantages of class actions.

**IV.    Defendants' Argument That The Requests Are Oppressive and Unduly Burdensome Are Not Relevant to the Entry of a Protective Order and Should Be Rejected.**

Defendants argued that the document requests at issue are unduly burdensome, oppressive and will result in undue expense and outweigh the relevance of the documents sought.[17] (Dkt. #100, at 4.)  This position is without merit.  The mere fact that numerous documents have been produced is no defense

---

[17] Defendants did not assert this objection in their original response.  *See* Defendant's Response to First Request to Produce.

to the production of other relevant documents.  *Blaine v. General Motors Corp.,* 141 F.R.D. 328 (M.D. Ala. 1991) (mere fact that producing documents would be burdensome and expensive and would interfere with a party's normal operations is not a reason to refuse an otherwise legitimate discovery request).  Defendants made this bald assertion without any factual support regarding the burdensomeness of production, nor did they assert any factual basis for irrelevancy.  Further, the cases relied on by Defendants in their previous Motion for Protective Order, while stating in some instances the proper principle, are so far afield from the factual circumstances of the instant case as to be irrelevant and not helpful to the analysis here. [18]  (Dkt. #100, at 4-5.)   In contrast to the cases cited by Defendants, Plaintiffs seek information related to members of a class that they represent to advance interests common to the entire class.

Plaintiffs are sensitive to the fact that class members' records are stored in offices around the state.  To alleviate any burdens of production on Defendants'

---

[18] *In Re Multi-Piece Rim Products Liability Litigation*, 652 F.2d 671 (D.C. Cir. 1981) (addresses compelling discovery from non-party witnesses in a multi-district litigation case and involves the application of holdings in a number of courts which included orders adverse to party seeking protection); *Cunningham v. Connecticut Mutual Life Insurance*, 845 F. Supp. 1403 (S.D. Cal. 1944) (protective order denied and motion to compel granted in context, inter alia, of waiver of previleges and allegations of fraud); *Harris v. Amoco Production Co.*, 768 F.2d 669 (5th Cir. 1985) (involving interpretation of a court's authority to request the use of documents obtained by the Equal Opportunity Commission in litigation for other purposes); *Cockrum v. Johnson*, 917 F. Supp. 479 (E.D. Tex. 1996) (providing protection to intimate letters written to under-aged daughter in a criminal habeas proceedings raising ineffective assistance of counsel where other evidence available); and *Blum v. Schlegel*, 150 F.R.D. 38, 41 (W.D.N.Y. 1993) (providing protection to the production of academic colleagues tenure files as irrelevant to First Amendment claims).

part, Plaintiffs offered to inspect the records at the location where they are stored and to request copies of only the documents necessary for Plaintiffs' case. Contrary to Defendants' assertion, Plaintiffs have not burdened Defendants with additional requests. Plaintiffs merely seek access to documents that were already requested and are relevant to their case. Plaintiffs are willing to limit disclosure of the information to comply with federal and state privacy laws. The certified class contains several hundred individuals. For Defendants to argue that production of relevant documents is without justification does not take into account the specificity provided by Plaintiffs as to the information sought, the class allegations or the size of the class.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order compelling Defendants to produce documents responsive to requests numbers: 17 through 20, 27, 30, 34, 37 and 46, and issue the attached proposed Order of Protection to safeguard the confidentiality and privacy concerning the information disclosed concerning members of the certified class.

Respectfully Submitted,

  s/ Andrea Costello
Andrea Costello
Florida Bar No.532991

Peter P. Sleasman

23

Florida Bar No.367931

Southern Legal Counsel, Inc.
1229 NW 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890
Facsimile: (352) 271-8347

Appearing Pro Hac Vice:
Jane Perkins
Sarah Somers

N A T I O N A L   H E A L T H   L A W
PROGRAM
211 N. Columbia Street
Chapel Hill, NC 27514
(919) 968-6308
(919) 968-8855 (fax)

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Motion to Compel Production of Documents and for Entry of an Order of Protection was furnished by electronic notification this 18th day of June, 2004 to the following:

George Waas and Douglas B. MacInnes
Office of the Attorney General
PL-01, the Capitol
Tallahassee, FL 32399-1050


_  s/ Andrea Costello_
Andrea Costello